IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | |
| | | Criminal No. RDB-10-0532 |
| ULYSSES S. CURRIE, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendants Maryland State Senator Ulysses S. Currie ("Senator Currie"), William J. White ("White"), and R. Kevin Small ("Small") move to dismiss the following charges against them: Conspiracy to violate the Travel Act, 18 U.S.C. § 1952, and the Hobbs Act, 18 U.S.C. § 1951 (Count One), violations of the Travel Act (Counts Two through Seven), and violations of the Hobbs Act, (Count Eight).[1] Count One names Defendants Senator Currie, White and Small as co-conspirators, as well their former employer, Shoppers Food Warehouse, Corp. ("Shoppers").[2] Counts Two through Seven allege acts of bribery undertaken by Senator Currie with the assistance of White and Small pursuant to Senator Currie's alleged corrupt relationship with Shoppers. Count Eight alleges that Senator Currie, aided and abetted by White and Small, obtained money by extortion under color of official right from Shoppers. The parties' submissions have been reviewed and a hearing was held on July 25, 2011. For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 45) is DENIED.

---

[1] On May 11, 2011, on a motion from the Government, Counts Nine through Sixteen were dismissed without prejudice. ECF No. 77. Defendants do not move to dismiss the remaining claims articulated in Counts Seventeen and Eighteen, which allege false statements by White and Senator Currie, respectively.
[2] Shoppers has entered into a deferred prosecution agreement with the Government. *United States v. Shoppers Food Warehouse*, Criminal No. RDB-10-0533 (ECF No. 6).

1

BACKGROUND

The Grand Jury has returned an Indictment against State Senator Ulysses S. Currie, a long-time member of the Maryland General Assembly who represents District 25, which is located in Prince George's County, William J. White, the former president of the Maryland Shoppers Division, and R. Kevin Small, a former property manager for the Maryland Shoppers Division. The Indictment generally alleges that Shoppers checks were issued on a periodic basis to Senator Currie in exchange for corrupt activities in the course of his official duties as a State Senator for the benefit of Shoppers, White and Small. It is alleged that this activity was concealed within a consulting relationship between Senator Currie and Shoppers. The Indictment alleges that between 2003 and 2008, Senator Currie received a monthly fee in return for helping Shoppers with community relations activities. Senator Currie was paid a total of $245,816.79 during this period, and is alleged to have engaged in acts for the benefit of Shoppers in return for these payments. It is alleged that from 2004 to 2008, Senator Currie failed to disclose this consulting relationship with Shoppers on a required annual ethics disclosure form for state legislators.

The Indictment states that Senator Currie and White began discussing a consulting arrangement in 2002, and entered into a written final agreement in February 2003. The alleged bribery scheme began thereafter, lasting for nearly five and a half years. At some point during this time, Small became Shoppers' primary contact with Senator Currie. On April 22, 2006, White retired from Shoppers. On June 29, 2007, Small terminated his employment with Shoppers. Though neither White nor Small were still employed by Shoppers, the scheme is alleged to have lasted for approximately one more year.

The acts that Senator Currie allegedly undertook to benefit the interests of White, Small and Shoppers are:

1. Causing the Maryland Department of Business and Economic Development to provide public funding to the owner of the Mondawmin Mall in Baltimore, Maryland, in order to obtain a lower rent for Shoppers at that location;

2. Causing the introduction of legislation in the 2005 Maryland General Assembly allowing for the transfer of an alcohol license for the benefit of Shoppers;

3. Voting in favor of the alcohol legislation with the knowledge that it was designed to apply to a liquor license for Shoppers;

4. Facilitating the approval of the transfer of that liquor license by Prince George's County Board of License Commissioners;

5. Delaying the implementation of parts of the Maryland Energy Efficiency Standards Act that would apply to Shoppers;

6. Causing the Maryland-National Capital Park and Planning Commission to negotiate its right of first refusal with Shoppers regarding a particular property in Prince George's County that Shoppers wanted to use for the expansion and renovation of its supermarkets;

7. Attempting to cause the Maryland Department of Transportation to award a $2-3 million grant for road improvements to a private developer for the benefit of Shoppers;

8. Attempting to cause the Maryland State Highway Administration to approve the installation of a traffic signal on Maryland Route 140 for the benefit of Shoppers; and

9. Causing the Maryland State Highway Administration to expedite its review of Shoppers' application for the installation of a traffic signal on Maryland Route 198 for the benefit of Shoppers.

## STANDARD OF REVIEW

All federal felonies must be prosecuted by an indictment that contains a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(a) and (c)(1). The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a

grand jury, . . . nor be deprived of life, liberty, or property without due process of law." Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." In conjunction with the notice requirement of the Sixth Amendment, the Indictment Clause provides two additional protections: the right of a defendant to be notified of the charges against him through a recitation of the elements, and the right to a description of the charges that is sufficiently detailed to allow the defendant to argue that future proceedings are precluded by a previous acquittal or conviction. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974) ("An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense"); *United States v. Carrington*, 301 F.3d 204, 209-10 (4th Cir. 2002) (same).

## ANALYSIS

### I. TRAVEL ACT CHARGES

The Indictment alleges that Defendants Senator Currie, White and Small violated the Travel Act (Counts Two through Seven) and conspired to violate the Travel Act (Count One).

#### A. Substantive Travel Act Charges (Counts Two through Seven)

Counts Two and Three allege violations by Senator Currie, White and Small; Count Four alleges violations by Senator Currie and Small; Counts Five, Six and Seven allege violations solely by Senator Currie. The Travel Act, 18 U.S.C. § 1952, provides that:

> Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—(1) distribute the proceeds of any unlawful activity; or . . . (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform the unlawful activity . . . shall be fined under this title, imprisoned . . . or both . . . .

4

18 U.S.C. § 1952(a). The term "unlawful activity" is defined to include "extortion, bribery, or arson *in violation of the laws of the State in which committed* . . . ." 18 U.S.C. § 1952(b) (emphasis added). The Indictment charges that Defendants violated Maryland's bribery statute, as codified in Maryland Criminal Law Article 9-201(c). *See* Indictment, Count One ¶¶ 6(b), 7(a); Counts Two-Seven, ¶ 2. Thus, in order to find that Defendants violated the Travel Act, the Government must prove that Defendants violated Maryland's bribery statute.

Defendants assert that Counts Two through Seven and the underlying conspiracy to violate the Travel Act charged in Count One must be dismissed because Maryland's bribery statute is unconstitutionally vague as applied. A statute is unconstitutionally vague and violates the Due Process Clause of the Fifth Amendment when it does not provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, or is so vague as to encourage arbitrary and discriminatory enforcement. *United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Buckley v. Valeo*, 424 U.S. 1, 77 (1976)). The Maryland bribery statute, codified in Maryland Criminal Law Article 9-201(c), states that a public employee is prohibited from demanding or receiving a "bribe, fee, reward, or testimonial" in order to "(1) influence the performance of the *official duties* of the public employee; or (2) neglect or fail to perform the *official duties* of the public employee." (emphasis added).

Defendants argue that the phrase "official duties" is unconstitutionally vague and therefore did not put Defendants on notice of the criminal implications of Senator Currie's extra-legislative conduct. Defendants articulate four main arguments why the statute is unconstitutional as applied in this case: "(1) the bounds of a state legislator's 'official duties' are not clearly delineated by statute or otherwise; (2) the defendants did not have notice that his

extra-legislative actions were illegal; (3) Maryland ethics laws make clear that a legislator's conduct, like that of Senator Currie's in this case is legal when a legislator takes the administrative step of filing certain paperwork; and (4) the vast majority of his alleged criminal conduct could have been performed by any private consultant." Mot. Dismiss at 27.

### 1. The Bounds of Senator Currie's Official Duties are Sufficiently Clear

First, Defendants assert that the phrase "official duties" is unconstitutionally vague because the parameters of Senator Currie's "official duties" were not clearly delineated by statute or otherwise. This argument was recently rejected by the Maryland Court of Appeals in *Thomas v. State*, 413 Md. 247 (2010). In *Thomas*, the defendant, the Deputy Director of Prince George's County's Office of Central Services, was convicted of violating Maryland's bribery statute by accepting a bribe in exchange for attempting to secure approval of a development project. *Id*. at 250. At trial, the Circuit Court instructed the jury that a defendant's lack of authority to perform an act was not a defense to receiving or soliciting a bribe. *Id*. at 257. On appeal, the defendant argued that the trial court had erred in its instruction. *Id*. Essentially, the defendant asserted that that since he did not have actual authority to approve of the development project, his conduct in accepting the bribe was not a part of his "official duties." *Id*.

The Maryland Court of Appeals affirmed the trial court's instruction, citing the following language from a Supreme Court of Arizona decision with approval, which it found had "clearly stated the rationale for interpreting bribery statutes to encompass those activities within a broad definition of an employee's official duties":

> An officer's conduct *need not be specifically prescribed by statute* in order to constitute an official action, and it is sufficient that the duty exists by reason of natural implication from the powers *specifically granted by statute, or by reason of the lawful custom or regulation of a department of government*. . . .

6

*Thomas*, 413 Md. at 259 (quoting *State v. Hendricks*, 66 Ariz. 235 (1947) (emphasis added)). The Maryland Court of Appeals went on to explain that it considered *Hendricks* as "implicitly introducing an element of reasonableness into the determination of what are the bribed person's 'official duties'" and that "the reasonableness element involves both consideration of what an objective, outside observer would understand her duties to be, and what the public employee would expect the penal statute to proscribe, or common sense for that matter." *Id*.

Defendants' argument that "official duties" is unconstitutionally vague was also implicitly rejected by the Maryland Court of Special Appeals in *Richardson v. State*, 63 Md. App. 324 (1985). In *Richardson*, the defendant, a clerk of the State Department of Vital Records, was convicted under Maryland's bribery statute for selling blank birth certificates. *Id*. at 326. On appeal, defendant argued that selling blank birth certificates fell outside of his "official duties," and therefore an element of the bribery statute had not been proven. *Id*. at 327. In analyzing the scope of the defendant's official duties, the Court of Special Appeals found that what constitutes official duties falls on a "spectrum." *Id*. (citing *Kable v. State,* 17 Md. App. 16 (1973)). On one end of the spectrum are duties that public employees or officials are "prohibited from undertaking and thus clearly beyond the scope of his official duties." *Id*. at 329-30. At the other end of the spectrum are "actions and duties which are expressly authorized by statute, rule or regulation." *Id*. at 330. The Court of Special Appeals explained that "lying between the two opposite poles of (1) duties or actions obviously prohibited and (2) official duties expressly prescribed or authorized, is a large area in which the determination of whether or not the action of a [public employee or public official] is part of his official duties must depend on the particular facts." *Id*.

Notably, the *Richardson* Court relied upon *United States v. Birdsall*, 233 U.S. 223 (1913), where the Supreme Court interpreted the "official act" requirement of the precursor to the federal bribery statute, 18 U.S.C. § 201. In *Birdsall*, the Supreme Court held that official actions need not be prescribed by statute. *Id*. at 230-31. Instead, official action can be "clearly established by settled practice." *Id*. at 231. In addition, the scope of official conduct may be found in "established usage." *Id*. Thus, "[e]very action that is within the range of official duty comes within the purview of these sections." *Id*. at 230. *See also United States v. Morlang*, 531 F.2d 183, 192 (4th Cir. 1975) (recognizing with respect to the federal bribery statute "that the official action sought to be influenced need not be prescribed by statute but may be governed by a lawful requirement of the executive department under whose authority the official is acting"); *United States v. Biaggi*, 853 F.2d 89, 97 (2d Cir. 1988) (concluding that the term "official acts" in the federal bribery statute "encompass[ed] all of the acts normally thought to constitute a congressman's legitimate use of his office."); *United States v. Urciuoli*, 513 F.3d 290, 294 (1st Cir. 2008) (interpreting the term "honest services" in the federal mail fraud statute, 18 U.S.C. § 1341, to prohibit both formal and informal "official action[s]" such as "the informal exercise on bills by a legislator, . . . [and] influence-buying short of formal bribes") (citations omitted).

In other words, "it is settled that the category of official acts is not limited to acts performed pursuant to responsibilities explicitly assigned by law." *United States v. Jefferson*, 562 F. Supp. 2d 687, 691 (E.D. Va. 2008) (analyzing 18 U.S.C. § 201). Instead, the Supreme Court has made clear that "[i]n numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery." *Birdsall*, 233 U.S. at 230-31. As a result, an official may violate Maryland's bribery

8

statute "even if the acts he performs in return for things of value are not among his statutorily prescribed duties, but are instead among those duties of the office established by settled practice." *Jefferson*, 562 F. Supp. 2d at 691.

### 2. Defendants Had Sufficient Notice that Senator Currie's Extra-Legislative Actions Were Illegal

Second, Defendants assert that the phrase "official duties" is unconstitutionally vague because it did not provide sufficient notice that Senator Currie's extra-legislative actions were illegal. Senator Currie is charged with improperly approaching state and local government officials on behalf of Shoppers without disclosing his financial relationship with Shoppers. For example, Senator Currie is alleged to have attempted to influence the Maryland Department of Business and Economic Development in its decision as to whether to provide public funding to the owner of Mondawmin Mall in Baltimore, Maryland in order to obtain a lower rent for Shoppers at the mall. Indictment ¶ 13(a). Senator Currie is also alleged to have introduced and voted in favor of liquor license legislation in the 2005 Maryland General Assembly that would benefit Shoppers. *Id*. ¶ 13(b)-(c). Working with the Department of Business and Economic Development on funding for a mall, or introducing and voting on legislation in the General Assembly, are precisely the kinds of "official duties" that are clearly established by settled practice.

Defendants emphasize that as a member of the General Assembly, Senator Currie was a part-time legislator and expected to seek outside employment. Defendants claim that "because the common practice for part-time Maryland legislators often involves interaction with other government entities and officials . . . a prosecution based almost entirely on non-legislative acts fails to provide adequate notice to these defendants as to what the law forbids." Mot. Dismiss at 20. Notably, the Maryland Legislator's Handbook states that during the 90-day legislative

9

session that begins the second Wednesday of each January the legislator's job "becomes full-time in nature." Md. Legislator's Handbook, Vol. I, Ch. 2: The Maryland General Assembly (2010).[3] A number of the allegations in the Indictment, including the conspiracy and Senator Currie's vote in favor of certain liquor license legislation, pertain to actions Senator Currie took during the legislative session. Thus, Senator Currie was not a part-time legislator during at least some of the time he is alleged to have acted unlawfully.

Furthermore, Defendants' contention that Senator Currie is being prosecuted for "non-legislative acts" is unavailing. As an initial matter, the Maryland bribery statute does not distinguish between "legislative" and "non-legislative" duties. Even if it did, as described above, the alleged misconduct by Senator Currie constituted legislative acts. Though the Maryland Ethics Guide expressly permits legislators to represent their private employers in matters involving the legislator's regular employment, they may only do so where the contact with government is "incidental" to the employment, a customary part of that employment, and is not for contingent compensation. Ann. Code of Md., State Government Art. § 15-504(b)(2)(ii). The conduct Senator Currie is alleged to have taken in return for bribes was not "incidental" to his employment. Consultants do not customarily have the ability to vote on legislation. Furthermore, Senator Currie is alleged to have received payment from Shoppers contingent upon using his influence for Shoppers' benefit. Accordingly, Defendants had sufficient notice that the alleged extra-legislative actions Senator Currie took in favor of Shoppers were unlawful.

### 3. Senator Currie's Alleged Unlawful Conduct Cannot be Immunized by Filing Certain Administrative Paperwork

Third, Defendants assert that "the phrase 'official duties' is unconstitutionally vague because . . . Maryland ethics laws make clear that a legislator's conduct, like that of Senator

---

[3] *See* http://mlis.state.md.us/2010rs/misc/Legislative_Handbooks/Volume_I.pdf

Currie's in this case, is legal when a legislator takes the administrative step of filing certain paperwork." Mot. Dismiss at 27. It is unclear how the filing of administrative paperwork relates to Defendants' argument that the Maryland bribery statute is unconstitutionally vague. Regardless, there can be no paperwork that would immunize Senator Currie from prosecution for bribery. Furthermore, whether or not Senator Currie filed certain administrative paperwork is a question of fact.

### 4. Whether Senator Currie's Alleged Unlawful Conduct Could be Performed by a Private Consultant is a Question of Fact

Fourth, Defendants assert that "the phrase 'official duties' is unconstitutionally vague because . . . the vast majority of [Senator Currie's] alleged criminal conduct could have been performed by any private consultant." Mot. Dismiss at 27. Again, Defendants' contention does not affect this Court's analysis as to whether Maryland's bribery statute is unconstitutionally vague. Additionally, Defendants' assertion raises a question of fact, not a question of law. Accordingly, Defendants' Motion to Dismiss the substantive Travel Act claims, Counts Two through Seven, because they are unconstitutionally vague, must be denied.

### B. Travel Act Conspiracy Charge (Count One)

Count One alleges that Senator Currie, White and Small conspired to violate, *inter alia*, the Travel Act. As the element of "official duties" in the Maryland bribery statute is not unconstitutionally vague as applied in this case, Count One of the Indictment sufficiently alleges a conspiracy to violate the Travel Act. In order to prove conspiracy, the Government must demonstrate: (1) the existence of an agreement, (2) an overt act by one of the conspirators in furtherance of the objectives, and (3) an intent on the part of the conspirators to agree. *United States v. Tedder,* 801 F.2d 1437, 1446 (4th Cir. 1986). In this case, the Indictment alleges that Senator Currie, White and Small knowingly agreed to bribery in violation of the Maryland

bribery statute and thereafter carried on such unlawful activity in violation of the Travel Act. Indictment ¶ 7(a). Accordingly, Defendants' Motion to Dismiss the conspiracy claim in Count One as it relates to the Travel Act charges must be denied.

## II. HOBBS ACT CHARGES (Counts One and Eight)

The Indictment alleges that Senator Currie, aided and abetted by White and Small, violated the Hobbs Act (Count Eight). The Indictment also alleges that Defendants Senator Currie, White and Small, as well as Shoppers, violated 18 U.S.C. § 371 by conspiring to violate the Hobbs Act (Count One). The Hobbs Act states:

> Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years or both.

18 U.S.C. § 1951(a). "Extortion" is defined under the statute as "the obtaining of property *from another*, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or *under color of official right*." 18 U.S.C. § 1951(b)(2) (emphasis added).

Defendants raise two primary arguments as to why the Hobbs Act claims must be dismissed. First, they make the same constitutional vagueness challenge as made with respect to the Travel Act—that an extortion "under color of official right" claim under the Hobbs Act depends upon interpreting the phrase "official acts," which is unconstitutionally vague. As explained in Section I, *supra*, the term "official duties" is not unconstitutionally vague as applied. Accordingly, the phrase "official acts" as applied to the Hobbs Act claims is not unconstitutionally vague.

Second, Defendants contend that because Paragraph 7 of Count One names Shoppers as a co-conspirator, the Indictment lacks the necessary allegation that Defendants took property

12

"from another." In other words, Defendants argue that a person cannot be found guilty of extortion, aiding and abetting extortion, or conspiracy to extort, if the extorted party is a willing participant. In support of their argument, Defendants primarily rely upon *United States v. Brock*, 501 F.3d 762 (6th Cir. 2007), where the United States Court of Appeals for the Sixth Circuit held that to be convicted under the Hobbs Act, co-conspirators must have formed an agreement to "obtain property from someone outside of the conspiracy." *Id*. at 767. *Brock* concerned two brothers who were bail bondsmen and were accused of conspiring with a court clerk, a state official, to prevent their bonds from being collected. *Id*. at 767. At trial, the Brocks were convicted of conspiring with the clerk to commit extortion under color of official right. *Id.* The Sixth Circuit reversed, holding that "these three people did not agree, and could not have agreed to obtain property from 'another' when no other person was involved." *Id.*

Defendants' reliance on *Brock* is misplaced, as the facts in that case are distinguishable from the allegations at issue here. First, the Brocks were <u>not</u> charged with a substantive Hobbs Act violation, as Defendants are charged in this case. Thus, *Brock* does not hold the Government is precluded from proceeding against multiple defendants under a non-conspiracy Hobbs Act violation claim. Furthermore, the Brock brothers were charged with conspiracy to extort for paying money out of their own pockets to another member of the conspiracy. Thus, *Brock* dealt with a situation where property was taken from one individual co-conspirator and given to another individual co-conspirator. In this case, White and Small are not charged with taking money from their own pockets, but instead with taking money from their employer, Shoppers, a wholly-owned subsidiary of a publicly traded corporation, Supervalu, Inc. Indictment ¶ 1. The fact that Shoppers as a corporate entity is alleged to have participated in a conspiracy with two high-ranking executives does not place it within the ambit of the *Brock* case.

The Supreme Court's decision in *United States v. Evans*, 504 U.S. 255, 260 (1992), and the United States Court of Appeals for the Fourth Circuit's decision in *United States v. Spitler*, 800 F.2d 1267 (4th Cir. 1986) are controlling in this Court's analysis.[4] In *Evans*, the Supreme Court held that extortion occurred anytime an individual took "money that was not due to him for the performance of his official duties." 504 U.S. 255, 260 (1992). The Supreme Court explained that the nature of public office is inherently coercive and therefore sufficient to satisfy the inducement requirement of an extortion charge. *Id*. Thus, "the ruling in *Evans* clearly contemplates that a state official can conspire with a payor to extort property from the payor when the official knows that the payment is made in return for official acts." *United States v. Kott*, 625 F. Supp. 2d 854, 857 (D. Alaska 2007).

In *Spitler*, the Fourth Circuit affirmed that Defendant Spitler, acting as an agent of his employer, Transeastern Inspection, Inc. ("TEI"), a government contractor, was properly convicted of aiding and abetting extortion under the Hobbs Act and conspiring to do the same. *Spitler*, 800 F.2d at 1271. Spitler used TEI funds to pay and purchase requested goods for a state highway official, Carpenter, in exchange for approval of the company's excessive billings to the State of Maryland. *Id.* at 1270. Spitler and Carpenter were both charged as co-conspirators in the Hobbs Act violation. The Fourth Circuit held that even acting as the agent of TEI, Spitler was properly convicted of conspiracy and aiding and abetting extortion of that company because of his active role in the extortion. *Id.* at 1276.

Notably, the Fourth Circuit explained in *Spitler* that "the degree of activity necessary for a purported victim of extortion to be a perpetrator of it so that in reality he is not a victim but a

---

[4] It appears that the Fourth Circuit will soon have the opportunity to revisit the issues raised here in the pending case *United States v. Medford*, No. 08-5030, where appellants argue that the Fourth Circuit should vacate a Hobbs Act conspiracy conviction because the statute does not authorize prosecution for extorting from a fellow conspirator. *See* Brief of Appellee, 2010 WL 92880, and Appellant, 2010 WL 4738730.

victimizer subject to aiding and abetting and *conspiracy* is of no little significance." *Id*. at 1277 (quotation marks and citations omitted, emphasis added). Guided by *United States v. Johnson*, 337 F.2d 180 (4th Cir. 1964), which upheld the convictions of payors who had aided and abetted a congressman's receipt of money under the Travel Act, the *Spitler* Court found that alleged victims of extortion who played a "far more active role" in *addition* to the payment of money, such as "aiding, abetting, counseling, commanding, inducing and procuring," could be found guilty of aiding and abetting or conspiring to extort. Though the Fourth Circuit did not "declare a bright line," *Spitler*, 800 F.2d at 1278, the Court held that "when an individual exhibits conduct more active than mere acquiescence he or she may depart the realm of a victim and may unquestionably be subject to conviction for aiding and abetting and conspiracy." *Id.* at 1276 (citation omitted). Thus, *Spitler* holds that a victim who has done more than merely acquiesce to the extortion may also be found guilty of aiding and abetting and conspiracy.

It is also worth noting that in *Spitler*, the Fourth Circuit cited with approval *United States v. Nelson*, 486 F. Supp. 464 (W.D. Mich. 1980). In *Nelson*, a State Senator was indicted for violating the Hobbs Act by allegedly committing extortion "under color of official right" when he accepted money from a lobbyist in return for introducing certain legislation. *Id*. at 466. Like White and Small, the lobbyist in *Nelson* was charged with aiding and abetting the offense. *Id*. The lobbyist argued that he was a victim of the charged extortion, and therefore could not be convicted of aiding and abetting extortion. *Id*. at 488-490. The *Nelson* Court disagreed, holding that the lobbyist was "more than just a payor of extorted money" and therefore could not contend he was a mere victim. *Id*. at 490. The Court therefore held that in enacting the Hobbs Act, Congress intended to reach bribers—payors of extorted money where those payors had actively prompted the extortion. *Id*. at 491.

15

Furthermore, a number of courts have applied the "*Nelson* rule" that an extortion "victim" can be prosecuted for aiding and abetting and conspiracy where the "victim" did more than acquiesce to the extortion." For example, in *United States v. Cornier-Ortiz*, 361 F.3d 29 (1st Cir. 2004), the defendant was convicted of aiding and abetting extortion under the Hobbs Act for engaging in a number of unlawful schemes, including fraud and kickbacks, to divert federal housing and urban development funds. *Id*. at 37. The defendant argued that he could not be found guilty of aiding and abetting extortion because he was an "innocent victim" and caught in the corrupt schemes of others. *Id*. at 39. Upholding the conviction, the United States Court of Appeals for the First Circuit relied upon *Spitler* in holding that "a victim of extortion can cross the line into illegal behavior if he engages in more active conduct than simply agreeing to pay the extortioner." *Id*. at 40. The First Circuit refrained from delineating the "precise location of the 'line at which a payor's conduct constitutes sufficient activity beyond mere acquiescence of a victim," *id*. (quoting *Spitler*, 800 F.2d at 1278), but found that "wherever that line is drawn, there was sufficient evidence here to conclude that Cornier was on the wrong side of it." *Id*.

The United States Court of Appeals for the Fifth Circuit's analysis in *United States v. Wright*, 797 F.2d 245 (5th Cir. 1986) is also consistent with *Spitler*. In *Wright*, the Fifth Circuit upheld the conviction of defendants Wright and Armstrong, who were found to have extorted and conspired to extort money from Armstrong's law firm and his clients. The Fifth Circuit held that there was "no support for Wright's argument that he is to be viewed as a victim of Armstrong's extortionate conduct." *Id*. at 253. *See also United States v. Kenner*, 354 F.2d 780, 785 (2d Cir. 1965) (finding that a "payor of a bribe can be an aider and abettor"); *United States v. Kott*, 625 F. Supp. 2d 854 (D. Alaska 2007) (finding that *Evans* "clearly contemplates that a state official can conspire with a payor to extort property from the payor when the official knows

that the payment is made in return for official acts."). Thus, this Court rejects Defendants' argument that a person cannot be found guilty of extortion, aiding and abetting extortion, or conspiracy to do the same, if the extorted party is named as a co-conspirator. Accordingly, Defendants' Motion to Dismiss the Hobbs Act claims in Counts One and Eight must be denied.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 45) is DENIED.

A separate Order follows.


Dated:	August 5, 2011	/s/_____
	Richard D. Bennett
	United States District Judge